**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                             :
JERMAINE PEACE,              :
                             :      Civil Action No. 03-5987 (JBS)
             Petitioner,     :
                             :
        v.                   :
                             :            OPINION
ROY L. HENDRICKS, et al.,    :
                             :
             Respondents.    :
_____:
```

**APPEARANCES:**

> JERMAINE PEACE, Petitioner Pro Se
> #235084-695999B
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625
>
> LINDA A. SHASHOUA, ESQ.
> Camden County Prosecutor's Office
> Appeals Unit
> 25 North Fifth Street
> Camden, New Jersey 08102
> Attorneys for Respondents

**SIMANDLE, District Judge**

This matter is before the Court on petitioner Jermaine Peace's application for habeas corpus relief under 28 U.S.C. § 2254.  For the reasons stated below, the petition for habeas relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

I.   BACKGROUND

A.   Procedural History

Petitioner, Jermaine Peace ("Peace"), is presently confined at the New Jersey State Prison in Trenton, New Jersey, serving a prison term of twenty years with a ten-year period of parole ineligibility.

Peace was convicted on February 20, 1997, by jury trial, on a lesser charge of robbery in the second degree.[1]  On April 25, 1997, the Honorable Norman Telsey, J.S.C., sentenced Peace to a twenty year term of imprisonment with a ten year parole disqualifier, after finding that Peace was a second Graves Act offender, pursuant to N.J.S.A. 2C:44-3a, and a persistent offender.  This sentence was to run consecutive to the sentence Peace was then serving since Peace was on parole at the time he committed the robbery offense.

Peace appealed his sentence and conviction, and the Appellate Division affirmed in a per curiam Opinion filed on January 12, 2000.  (Ra10).[2]  The New Jersey Supreme Court denied certification on April 28, 2000.  (Ra14).

Thereafter, on or about July 26, 2001, Peace, through assigned counsel, filed a petition for post-conviction relief

---

[1] A Camden County Grand Jury indicted Peace on one count of first degree armed robbery.

[2] "Ra" refers to the respondents' appendix submitted with their answer to this habeas petition.  The appendix includes the relevant state court record.

2

("PCR") in state court.  Peace submitted a supplemental pro se brief in support of his PCR petition on or about August 24, 2001. The Honorable John T. McNeill, III, conducted a PCR hearing on January 11, 2002.  By Order filed on January 16, 2002, Judge McNeill denied the PCR petition.

On March 8, 2002, Peace filed a Notice of Appeal from the denial of post-conviction relief.  On June 4, 2003, the Appellate Division affirmed Judge McNeill's judgment denying the PCR petition.  The New Jersey Supreme Court denied certification on October 16, 2003.

Peace then filed this habeas petition on or about December 10, 2003.  The respondents answered the petition, and provided the relevant state court record, on or about April 22, 2004.

B.  Statement of Facts

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference under 28 U.S.C. § 2254(e)(1), will simply reproduce the New Jersey Appellate Division's factual recitation as set forth on direct appeal in this matter:

> On September 24, 1995, at approximately 7:30 p.m., Gilbert Shepard was driving through Camden, having just left his sixteen-year-old daughter's birthday party.  Shepherd owned a clothing business and often carried garments and other items in the trunk of his car.  As he approached the intersection of Eutaw Avenue and Benson Street, he observed two juveniles and defendant standing at the intersection. The juveniles, who were familiar with Shepard, waved him to the side of the road in order to look at his merchandise. He pulled over, got out of his car and proceeded to open his

trunk for the two juveniles, while defendant continued to walk down the street.

Minutes later, "out of nowhere," defendant reappeared accompanied by co-defendant Shawn Singleton.[3]  Singleton put a gun to Shepherd's[4] head and ordered him to get on the ground.  Shepherd complied and defendant proceeded to snatch a chain from Shepherd's neck, two bracelets from his wrist and the eyeglasses from his face.  Defendant then commanded the juveniles to grab garments as he took a brown bag containing garments and watches from Shepherd's car. Singleton ordered Shepherd not to get up as defendant and the juveniles fled.  When Shepherd did stand up to see what had been taken, he heard two shots causing him to duck behind the car.  Prior to trial Shepherd positively identified defendant, from a photo array, as one of his assailants.  He also positively identified defendant in the courtroom during trial.

At trial, Shepherd characterized defendant as the ring leader, although defendant did not have a gun.  He also testified that, although he never saw defendant prior to the robbery, he was able to get a good look at him during the robbery and saw his face clearly.  Later that evening, after the robbery, someone from the neighborhood directed Shepherd to defendant's house.  Defendant emerged from the house and returned most of Mr. Shepherd's property, including the brown bag of watches and garments, his glasses and both bracelets.  Shepherd testified that, as defendant returned his property, defendant indicated to him that he did not know Shepherd was "his people's people."  Shepherd indicated that defendant apologized for robbing him saying that he was "doing bad" at the time, needed money, and did not want to go to prison.

The State also produced Officer Ramonita Rivera of the Camden City Police Department, who testified that she responded to the report of a robbery and shots being fired. Officer Rivera indicated that when she arrived at the scene, she met with the victim who related to her what had happened.  At Shepherd's direction, Officer Rivera went to a house in the area and located two juveniles.  Shepherd positively identified them as participating in the robbery.

---

[3]  Mr. Shepherd referred to Shawn Singleton as "Shawn Hugo" at the trial.

[4]  The Appellate Division refers to the victim as both "Shepard" and "Shepherd".

4

Officer Rivera also testified that later that evening, at
the direction of one of the juveniles, two others were
arrested and some of Shepherd's property was recovered.  The
only other witness was Officer Peter Feliciano, who was
responsible for showing Mr. Shepherd the photographic array.
Officer Feliciano identified defendant in the courtroom and
testified that Shepherd selected defendant's photograph and
indicated that defendant had been involved in the armed
robbery.  Defendant presented no witness.

(Superior Court of New Jersey, Appellate Division, per curiam

Opinion, decided January 12, 2000, Ra10).

## II.  CLAIMS FOR HABEAS RELIEF

Peace challenges his state court conviction and sentence on

the following grounds: (1) he was denied a fair trial by the

submission to the jury of a photo array depicting him with the

inscription "Camden County Correctional Facility"; (2) he was

denied an impartial jury due to the prosecutor's racially

motivated peremptory challenges; (3) the trial court failed to

instruct the jury with respect to his out-of-court statement; (4)

he should not have been sentenced to an extended term as a second

Graves Act offender because he was not found guilty of armed

robbery, and the court erred in imposing an excessive

discretionary persistent offender sentence and in imposing

restitution without determining petitioner's ability to pay; (5)

petitioner was denied due process in his PCR proceedings because

he was unable to review his trial counsel's file; (6) ineffective

assistance of trial counsel (including Grounds Six and Nine in

the petition); (7) trial court erred in denying an evidentiary

hearing and determining that petitioner did not make a prima
facie showing of ineffective assistance of counsel; and (8)
ineffective assistance of appellate counsel.  (Petition, Grounds
One through Nine).

    In response to the petition, the State raises the
affirmative defense that several of the claims in the petition
are unexhausted; nevertheless, the State also argues that all of
the claims lack substantive merit and the petition should be
denied accordingly.[5]  To the extent any of the claims

_____

    [5]

 The respondents never raised the affirmative defense that Peace's habeas petition is time-barred.
The limitation period for a § 2254 habeas petition is set forth
in 28 U.S.C. § 2244(d), which provides in pertinent part:

    (1) A 1-year period of limitations shall apply to an
    application for a writ of habeas corpus by a person in
    custody pursuant to the judgment of a State court.  The
    limitation period shall run from the latest of—

        (A) the date on which the judgment became final by
    the conclusion of direct review or the expiration of
    the time for seeking such review; ...

    (2) The time during which a properly filed application
    for State post-conviction or other collateral review
    with respect to the pertinent judgment or claim is
    pending shall not be counted toward any period of
    limitation under this section.

    Section 2244(d) became effective on April 24, 1996 when the Antiterrorism and Effective
Death Penalty Act of 1996 ("AEDPA") was signed into law.  See Burns v. Morton, 134 F.3d
109, 111 (3d Cir. 1998); Duarte v. Herschberger, 947 F. Supp. 146, 147 (D.N.J. 1996).  A
state-court criminal judgment becomes "final" within the meaning
of § 2244(d)(1) by the conclusion of direct review or by the
expiration of time for seeking such review, including the 90-day
period for filing a petition for writ of certiorari in the United
States Supreme Court.  See Swartz v. Meyers, 204 F.3d 417, 419
(3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir.

asserted by Peace in this petition were not exhausted in state court, this Court may opt to review such claims, and deny them on the merits pursuant to 28 U.S.C. § 2254(b)(2).  Section

---

1999); U.S. Sup. Ct. R. 13.   Section 2244(d) also provides that the one-year limitations period shall be tolled during the time in which a properly filed state PCR petition is pending. 28 U.S.C. § 2244(d)(2). Thus, pursuant to § 2244(d), evaluation of the timeliness of a § 2254 petition requires a determination of, first, when the pertinent judgment became "final," and, second, the period of time during which an application for state post-conviction relief was "properly filed" and "pending."

Here, the judgment of conviction in this case became final after the enactment of AEDPA on April 24, 1996. In fact, the judgment of conviction became final 90 days after April 28, 2000, when the New Jersey Supreme Court denied certification on Peace's direct appeal from his conviction, or on July 27, 2000.  Thus, Peace had until July 27, 2001 within which to file his federal habeas petition.  However, the limitations period was tolled, pursuant to § 2244(d)(2), when Peace filed his state PCR petition on July 26, 2001.  The limitations period remained tolled until October 16, 2003, when the New Jersey Supreme Court denied certification on Peace's appeal from denial of the PCR petition.  Stokes v. District Attorney of the County of Philadelphia, 247 F.3d 539, 542 (3d Cir.), cert. denied, 534 U.S. 959 (2001) (the time during which a state prisoner may file for certiorari in the U.S. Supreme Court from the denial of his state PCR petition does not toll the one year limitations period under 28 U.S.C. § 2244(d)(2)).  Thus, the one year statutory period ran for 364 days, from July 27, 2000 until July 26, 2001, when it was tolled, and then began to run again on October 16, 2003.  Peace had one day from October 16, 2003 within which to file his federal habeas petition.  He did not file this petition until November 26, 2003 (the date his petition was signed, see Houston v. Lack, 487 U.S. 266, 276 (1988); Burns v. Morton, 134  F.3d 109, 113 (3d Cir. 1998) (incorporating the "mailbox rule" for habeas petitions submitted by inmates confined in an institution), almost 40 days after the limitations period had expired.  Nevertheless, while it appears to the Court that this petition was not timely presented under § 2244(d)(1), the Court may not sua sponte dismiss the petition on this ground if the respondents, being required to raise any affirmative defenses in their answer to the petition, fail to assert a statute of limitations defense. See Robinson v Johnson, 313 F.3d 128, 137 (3d Cir. 2002), cert. denied, 124 S.Ct. 48 (2003); Stewart v. Hendricks, 71 Fed.Appx. 904, 906 (3d Cir. 2003).

2254(b)(2) provides that "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." <u>See also</u> <u>Lambert v. Blackwell</u>, 134 F.3d 506, 514-15 (3d Cir. 1997), <u>cert</u>. <u>denied</u>, 532 U.S. 919 (2001)(a district court may deny a petition on the merits, pursuant to 28 U.S.C. § 2254(b)(2), where "it is perfectly clear that an applicant does not raise even a colorable federal claim").

### III.   <u>STANDARD GOVERNING REVIEW OF § 2254 CLAIMS</u>

The Court recognizes that a <u>pro se</u> pleading is held to less stringent standards than more formal pleadings drafted by attorneys. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). Thus, a <u>pro se</u> habeas petition should be construed liberally and with a measure of tolerance. <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Duarte v. Hurley</u>, 43 F. Supp.2d 504, 507 (D.N.J. 1999). Because Peace is a <u>pro se</u> litigant, the Court will accord his petition the liberal construction intended for <u>pro se</u> petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts. <u>See</u> 28 U.S.C. § 2254(e); <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert</u>. <u>denied</u>, 122 S.Ct. 269 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir.

8

1996)(*citing* <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).  Section

2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim -
>
> > (1)  resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an
> > unreasonable determination of the facts in light
> > of the evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme

Court explained that subsection (d)(1) involves two clauses or

conditions, one of which must be satisfied before a writ may

issue.  The first clause, or condition, is referred to as the

"contrary to" clause.  The second condition is the "unreasonable

application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the

"contrary to" clause, "a federal court may grant the writ if the

state arrives at a conclusion opposite to that reached by [the

Supreme] Court on a question of law or if the state court decides

a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts."  <u>Id</u>.  Under the

"unreasonable application" clause, a federal court may grant the

writ if "the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case." Id. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  Id. at 411.  See also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v. Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  Id.  AEDPA prohibits such *de novo* review.  Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable.  Id.  In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  See Duncan, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

## IV.  ANALYSIS

A.  Admission of Petitioner's Photo Array

Peace first argues that he was denied a fair trial when the trial court allowed a photograph of petitioner, with the inscription "Camden County Correctional Facility", to be submitted to the jury.  Peace contends that the reference to the correctional facility left the jury with the unfair impression that petitioner was a criminal.

Peace raised this claim on direct appeal.  The Appellate Division found that the photographs were submitted to the jury in error, but nevertheless, found the error to be harmless, failing to rise to the level of a constitutional deprivation.  As it is relevant to this Court's determination of the issues presented by this claim, the Appellate Division's findings are reproduced in full:

> The photographic array which was submitted into evidence consisted of front and side view mug shot style photographs of eight individuals.  Each photograph, including that of defendant, contained a plaque at chest level with the words "SHERIFF'S DEPARTMENT CAMDEN COUNTY NEW JERSEY CORRECTIONAL FACILITY."  At the time the photographs were introduced, defense counsel did not object despite explicit inquiry by the trial judge.  The trial judge gave the Model Jury Charge[6] that the photograph of defendant is not evidence of prior arrest or conviction and explained to the jury that such photographs come into the hands of law enforcement from a variety of sources unconnected with criminal activity.  Following the trial judge's charge and prior to the time the evidence was given to the jury, defense counsel moved to exclude the eight photographs as prejudicial.  The trial judge indicated that the objection was too late because the trial was concluded, and applied the doctrine of laches.

---

[6] Model Jury Charges (Criminal), Identity - Police Photos (January 6, 1992).

Defendant contends he is entitled to a new trial because the trial judge erred in not sanitizing the photographs by removing the offensive words "Sheriff's Department Camden County New Jersey Correctional Facility."  Our first inquiry deals with the contention that the photograph should have been sanitized.  Where identification is not an issue, we have held the admission of mug shots to be reversible error.  State v. Taplin, 230 N.J. Super. 95, 99-100 (App. Div. 1988).  We pointed out in Taplin that where a defendant does not testify and identification is not an issue, the probative value of a mug shot is so minimal that there is no other reason to seek its admission other than to permit a jury to unfairly draw the inference that a defendant has a prior criminal record.  Id. at 99.

However, where identification is in issue, mug shots are generally admissible, as long as they are in as neutral a form as possible, despite the inference of prior criminal activity that they raise.  Ibid.  Here, identification was at issue as the defense questioned the victim at length concerning his ability to observe defendant during the happening of the incident and argued that, though present, the defendant was a "victim" having not been involved in the actual robbery.

In State v. Burton, 309 N.J. Super. 280, 288-89 (App. Div.), certif. denied, 156 N.J. 407 (1998), we found that the trial judge should not have allowed a photo array into evidence where the pictures depicted the individuals in orange jail clothing, notwithstanding the fact that identification was in issue.  Likewise, the trial judge below should not have allowed the jury to see the photographic array without first sanitizing the pictures by removing the objectionable wording.  N.J.R.E. 403(a) permits the court to exclude evidence if the probative value is substantially outweighed by the risk of undue prejudice.  The decision is left to the sound discretion of the trial judge.  State v. Carter, 91 N.J. 86, 106 (1982).  The decision on the part of the trial judge to permit the photographs into evidence based upon laches was an abuse of discretion.  The trial judge was obliged to determine the issue by weighing the probative value against the likelihood of undue prejudice, not based upon laches or waiver.

Our conclusion that the trial judge improperly admitted the photographs does not end our inquiry.  We must determine whether the error was harmless.  State v. La Porte, 62 N.J. 312, 318 (1973).  In order for an error to be harmless there

must be a real possibility that it led to an unjust result. Ibid. As we stated in Burton, supra, sufficient possibility is "one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." 309 N.J. Super. at 289. See also State v. Bankston, 63 N.J. 263, 273 (1973); State v. Macon, 57 N.J. 325, 335-36 (1971).

Here, there is overwhelming evidence of defendant's guilt. The victim testified that he got a good look at defendant at the time of the robbery. Defendant admitted his involvement to the victim at the time he returned the property and apologized for the crime. The victim was able to identify defendant in the photo array, as well as during trial. Not only was there impressive other evidence bearing on defendant's guilt but the trial court instructed the jury, using the Model Jury Charge, cautioning the jury and instructing them concerning the limited manner in which they should consider the photographic evidence. We therefore conclude that the error was harmless beyond a reasonable doubt.

(Ra 10, at pp. 5-9).

Federal courts must afford the states deference in its determinations regarding evidence and procedure. See Crane v. Kentucky, 476 U.S. 683, 690 (1986). It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

However, evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial." Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22,

1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer,
19 F.3d 110, 120 (3d Cir. 1994), cert. denied, 513 U.S. 881
(1994); Lisenba v. California, 314 U.S. 219, 228, 236
(1941)(holding that state court's evidentiary rulings may form
the basis for habeas relief when they "so infused the trial with
unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law
is a fundamental defect which inherently results in a complete
miscarriage of justice or in an omission inconsistent with the
rudimentary demands of fair procedure." Hutchins, 1991 WL 167036
at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d
Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations
omitted). The Supreme Court has further stated that "an
otherwise valid conviction should not be set aside if the
reviewing court may confidently say on the whole record that the
constitutional error was harmless beyond a reasonable doubt."
Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). An error is
not harmless if "it aborts the basic trial process or denies it
altogether." Hutchins, 1991 WL 167036 at *5 (citing Rose v.
Clark, 478 U.S. 570, 578 n.6 (1986)).

Here, after reviewing the record in this case, the Court
finds that the trial court's admission of the photo array,
accompanied by the trial judge's limiting instruction, was not an
error of a constitutional dimension. This Court agrees with the

state appellate court's determination that, although the trial court's admission of the photo array without removing the offending reference to the Camden County Correctional Facility may have been error, the admission of the photo array was nothing more than a harmless error.  There was overwhelming other evidence of petitioner's guilt at trial, including the victim's strong testimony against petitioner, petitioner's admission to the victim as to his involvement in the robbery, and petitioner's return of some of the stolen property to the victim, which clearly and substantially outweighed any prejudicial effect the photo might have had on the jury.[7]  Moreover, the state appellate court was satisfied that the trial court's curative, cautionary instructions to the jury concerning the limited manner in which the jury should consider the photo array was sufficient to render harmless the admission of the photo array, especially when weighed against the "impressive other evidence bearing on defendant's guilt."  (Ra10, at pp. 8-9).  A thorough review of the whole record demonstrates that the trial process was fundamentally fair.  Therefore, this Court finds that the trial

---

[7] This Court notes respondents' argument that the prejudicial circumstances in this case were comparatively minimal.  All of the individuals in the photo array, including the petitioner, were wearing ordinary street clothes.  They were not depicted in standard issue orange jail clothing.  Moreover, all of the photos had the same inscription with respect to the Camden County Correctional Facility, and thus petitioner was not singled out from the others.  Finally, the trial court gave specific curative instructions to the jury that addressed the risk of prejudice in this case, namely, that the photo and inscription should not be considered as evidence that petitioner had ever been arrested or convicted of any crime.  (Respondents' Brief, at pp. 35-36).

court's decision to allow this one photograph into evidence did not violate Peace's constitutional right to a fair trial.

Further, there is no showing that the state court determinations "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," under the standards set by 28 U.S.C. § 2255(d)(1) & (2), supra.  Accordingly, this ground for a writ of habeas corpus will be denied.

B.  Batson Claim

In his second claim, Peace argues that he was denied an impartial jury drawn from a representative cross-section of the community as a result of the prosecutor's use of two peremptory challenges to exclude African-American jurors.  (Petition, ¶ 12B).  Trial counsel contested the peremptory challenges during the jury selection process, and after hearing the prosecutor's reasons for excluding the two African-American jurors, the trial court was satisfied that the prosecutor exercised the two peremptory challenges based on race-neutral considerations.

Peace raised this argument on direct appeal.  The Appellate Division found:

> We are satisfied from our review of the record that defendant has not established a prima facie showing that the

17

> prosecuting attorney exercised the State's peremptory
> challenges in a constitutionally-impermissible way as
> required by <u>State v. Gilmore</u>, 103 N.J. 508, 535-36 (1986).
> There was no showing that the State struck most or all of
> the members of the identified group or that it used a
> disproportionate number of its peremptory challenges against
> that group. <u>Id</u>. at 535-36. Furthermore, notwithstanding
> the lack of a <u>prima facie</u> showing, we are satisfied, as was
> the trial judge, with the explanation given by the
> prosecuting attorney for exercising those peremptory
> challenges contested by defendant.

(Ra10, at pg. 9).

Upon review of the record, in particular, the jury selection transcripts, the Court finds no basis for petitioner's claim that he was denied an impartial jury representing a cross-section of the community. There is no indication that the jury panel did not include a representative cross-section of African-Americans, nor did trial counsel argue that the overall jury panel was unconstitutionally non-representative of the community. Rather, the only challenge petitioner asserts is that the prosecutor used his peremptory challenges to impermissibly exclude African-American jurors.

The three-part test to determine whether a peremptory challenge is unconstitutionally based on race was set forth by the Supreme Court in <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). First, a defendant must show that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties'

submissions, the trial court must determine whether the defendant has shown purposeful discrimination.  See id. at 96-98; accord United States v. Milan, 304 F.3d 273, 281 (3d Cir. 2002), cert. denied, 538 U.S. 1024 (2003).

In this case, the Appellate Division applied a comparable three-prong test in the context of state law.  See State v. Gilmore, 103 N.J. 508, 535-36 (1986)(a prosecutor shall not exercise peremptory challenges to excuse potential petit jurors on the basis of race under both the United States and New Jersey constitutions).  The state appellate court concluded that there was not a disproportionate number of peremptory challenges used against the identified group.  The Appellate Division also agreed with the trial court's determination that the prosecutor's two peremptory challenges were exercised permissibly based on race-neutral reasons.[8]

---

[8] At the time defense counsel had raised a claim as to racially-based challenges to potential jurors, the prosecutor had exercised three peremptory challenges, two of which were contested by defense counsel.  In explaining the reasons for excusing the two potential African-American jurors, the prosecutor told the trial court that she excused the first African-American juror because he had a prior conviction, (Rta 1, 46:25), and the second African-American juror based on the juror's occupation as a human services technician at Ancora State Psychiatric Hospital and on the fact that the juror previously testified as a witness for the State for the Grand Jury.  (Rta 1, 47:3-8).  The prosecutor further elaborated that, in her professional experience, people called to testify at the Grand Jury were usually subpoenaed or forced to testify.  (Rta 1, 47:3-8).  Based on these articulated reasons, the trial court found good cause to excuse the two African-American jurors.  At the conclusion of jury selection, the prosecutor had exercised three additional peremptory challenges, none of which were contested as impermissibly race-based challenges.

Consistent with the state court findings, and this Court's review of the record, this Court likewise concludes that Peace's claim regarding the composition of his jury is meritless.  The state courts applied the proper analyses to decide the federal claim.  Indeed, Peace had not established a <u>prima facie</u> case under <u>Batson</u>, because he failed to demonstrate that the peremptory challenges were exercised to exclude minority representation from the jury.  Further, Peace has not demonstrated, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  This ground for habeas relief is therefore denied.

C.  <u>Jury Instruction</u>

In his third ground for relief, Peace contends that the trial court's failure to instruct the jury to consider his out-of-court statement with caution violated petitioner's right to a fair trial.  Specifically, petitioner states that the court failed to explain to the jury "how to approach or consider said [out-of-court] statement."  (Petition, Ground C).

20

Peace raised this claim on direct appeal.  The Appellate Division found the contention to be "misplaced".  Specifically, the court held:

> The cautionary instruction required in State v. Hampton, 61 N.J. 250, 272 (1972), and N.J.R.E. 104(c) is required when the out of court inculpatory statement is given to a police officer not, as here, to a non-police witness.  State v. Baldwin, 296 N.J. Super. 391, 398 (App. Div.), certif. denied, 149 N.J. 143 (1997).  Similarly, there was no error in the failure to give a cautionary instruction as required in State v. Kociolek, 23 N.J. 400, 421 (1957), concerning the risk of misunderstanding or inaccuracy as there was no genuine dispute as to the precise content of the alleged oral statement.  See Baldwin, supra, 296 N.J. Super. at 401.

(Ra10, at pp. 9-10).

Questions relating to jury charges are normally matters of state law and are not cognizable in federal habeas review.  See Engle v. Isaac, 456 U.S. 107 (1982); Henderson v. Kibbe, 431 U.S. 145 (1977); Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir.), cert. denied, 502 U.S. 902 (1991); Grecco v. O'Lone, 661 F. Supp. 408, 412 (D.N.J. 1987)(Thompson, J.).  Only where the jury instruction is "so prejudicial as to amount to a violation of due process and fundamental fairness will a habeas corpus claim lie." Id.

Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the

21

> trial record.  In addition, in reviewing an ambiguous
> instruction ..., we inquire "whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way" that violates the
> Constitution.  And we also bear in mind our previous
> admonition that we "have defined the category of
> infractions that violate 'fundamental fairness' very
> narrowly."  "Beyond the specific guarantees enumerated
> in the Bill of Rights, the Due Process Clause has
> limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations

omitted).  Thus, the Due Process Clause is violated where "the

erroneous instructions have operated to lift the burden of proof

on an essential element of an offense as defined by state law."

Smith v. Horn, 120 F.3d 400, 416 (1997), cert. denied, 522 U.S.

1109 (1998).  See also In re Winship, 397 U.S. 358, 364 (1970)

("the Due Process Clause protects the accused against conviction

except upon proof beyond a reasonable doubt of every fact

necessary to constitute th crime with which he is charged");

Sandstrom v. Montana, 442 U.S. 510, 523 (1979) )(jury

instructions that suggest a jury may convict without proving each

element of a crime beyond a reasonable doubt violate the

constitutional rights of the accused).

    Where such a constitutional error has occurred, it is

subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d at

416-17 (1997); Neder v. United States, 527 U.S. 1, 8-11 (1999).

"[I]f the [federal habeas] court concludes from the record that

the error had a 'substantial and injurious effect or influence'

on the verdict, or if it is in 'grave doubt' whether that is so,

22

the error cannot be deemed harmless." <u>Smith v. Horn</u>, 120 F.3d at
418 (citing <u>California v. Roy</u>, 519 U.S. 2, 5 (1996)).  In
evaluating a challenged instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

<u>Middleton v. McNeil</u>, 541 U.S. 433, 437 (2004) (internal
quotations and citations omitted).

Upon review of the record, this Court finds no error in the
jury charges overall.  Moreover, there was no error by the trial
court in failing to give <u>Hampton</u> or <u>Kociolek</u> charges because
neither charge was required under the circumstances in this case.
First, petitioner's out-of-court statement was an admission made
to the victim, not to a police officer or other investigating
officer.  Second, Peace's statement to the victim about his
involvement in the robbery was simple, direct, and unequivocal.
There was no genuine dispute as to the content of the statement
or that the apology statement was given involuntarily.  Thus, the
trial court's omission of a specific jury instruction with
respect to the out-of-court statement was not error, let alone an
error of constitutional magnitude.

Further, "[a]n omission, or an incomplete instruction, is
less likely to be prejudicial than a misstatement of the law."

<u>Henderson v. Kibbe</u>, 431 U.S. at 155.  In this case, the Appellate Division determined that there was overwhelming evidence of petitioner's guilt.  Consequently, even if the Court were to find that it was error to omit a limiting instruction to the jury in considering the out-of-court statement, which it was not, such assumed error was plainly harmless when balanced against the overwhelming other evidence of petitioner's guilt shown at trial.  Finally, there is no showing that the state court determinations on this issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Therefore, this ground for a writ of habeas corpus will be denied.

D.   <u>Sentencing Issues</u>

Peace next argues that the trial court erred in imposing an extended term under the Graves Act, N.J.S.A. 2C:43-6, after petitioner was convicted as an accomplice in an unarmed robbery. Peace also challenges the prison term as excessive, and the imposition of restitution without a hearing to determine his ability to pay.  These claims were raised by petitioner on his direct appeal.

The Appellate Division rejected these arguments:

> An accomplice convicted of unarmed robbery is subject to Graves Act penalties if the trial judge finds from a review of the evidence that the defendant knew or had reason to know his cohort would use or be in possession of a firearm in the course of committing the crime.  <u>State v. White</u>, 98 N.J. 122, 129-30 (1984).  We conclude from the record that there was sufficient evidence to support the trial judge's determination that defendant was subject to the penalties mandated by the Graves Act.  N.J.S.A. 2C:44-3(d). Furthermore, we see nothing in the record to indicate that the trial judge abused his discretion in weighing the aggravating and mitigating factors and imposing the maximum sentence as a persistent offender.  <u>State v. Perry</u>, 124 N.J. 128, 176 (1991).

(Ra10, at pg. 10).

Sentencing is generally considered a matter of state criminal procedure, which does not fall within the purview of federal habeas review.  <u>United States v. Cepero</u>, 224 F.3d 256, 267 (3d Cir. 2000), <u>cert</u>. <u>denied</u>, 531 U.S. 1114 (2001); <u>Ervin v. Beyer</u>, 716 F. Supp. 163, 165 (D.N.J. 1989); <u>Grecco v. O'Lone</u>, 661 F. Supp. 408, 415 (D.N.J. 1987); <u>see</u> <u>also</u> <u>Johnson v. Beto</u>, 383 F.2d 197, 198 (5th Cir. 1967), <u>cert</u>. <u>denied</u>, 393 U.S. 868 (1968).

Indeed, absent some constitutional violation, federal courts cannot review a state's alleged failure to adhere to its own sentencing procedure. Rorie v. Beard, Civ.A.No. 04-3380, 2005 WL 825917, *5 (E.D. Pa. April 7, 2005)(*citing* Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988)).  Thus, a federal court will not reevaluate a sentence in a habeas proceeding unless it exceeds the statutory limits.  Jones v. Superintendent of Rahway State Prison, 725 F.2d 40 (3d Cir. 1984); see also Williams v. Duckworth, 738 F.2d 828, 831 (7th Cir. 1984), cert. denied, 469 U.S. 1229 (1985)("As a general rule, federal courts will not review state sentencing determinations that fall within statutory limits."); Bonner v. Henderson, 517 F.2d 135, 136 (5th Cir. 1975)("This Court will not upset the terms of a sentence within statutory limits unless so disproportionate to the offense as to be completely arbitrary and shocking").

Moreover, federal courts will not interfere with a state's sentencing scheme unless the petitioner can show that no reasonable sentencing court would have found the aggravating factors necessary to justify imposition of the sentence.  Lewis v. Jeffers, 497 U.S. 764, 783 (1990).  "While normal sentencing proceedings are not immune from all due process attacks, the Supreme Court has required only minimal due process protections in those proceedings."  United States v. Davis, 710 F.2d 104, 106 (3d Cir.), cert. denied, 464 U.S. 1001 (1983)(citations omitted).

Here, petitioner has not demonstrated that his sentence
violates any federal constitutional rights.  First, with respect
to an extended term under the Graves Act, the trial court noted
the testimony of the victim, Shepherd, who stated that a gun was
used by the co-defendant but petitioner played the "leadership
role" in the robbery, even if he did not actually hold the gun to
victim.  (Rta 4, 7:20-8:22).  Thus, even as an accomplice, Peace
fell within the purview of the Graves Act. (Rta 4, 9:12-16).  The
court found that Peace previously had been convicted of armed
robbery with a gun and was thus mandatorily subject to an
extended term as a second Graves Act offender.  (Rta 4, 9:24-
10:14).

The court also heard argument on sentencing petitioner to an
extended term as a persistent offender.  Sentencing under this
aspect is discretionary.  The sentencing court determined that
there were no mitigating factors and found the following
aggravating factors: an extensive prior criminal record, the
seriousness of the convicted offenses, and the risk that
petitioner will commit another offense.  These aggravating
factors and the need to deter petitioner and others from
violating the law "substantially outweigh[ed] the absence of
mitigating factors."  (Rta 4, 14:1-25; 15:1-16:4).

Therefore, based on examination of the sentencing
transcript, this Court finds that the sentencing judge properly

evaluated the aggravating and mitigating factors in a fair and reasonable manner based on the evidence and testimony proven at trial.  More significantly here, for purposes of federal habeas review, Peace's sentence plainly does not exceed the statutory limits for a second degree robbery conviction, nor does it shock the judicial conscience as even remotely excessive.  See Harris v. United States, 536 U.S. 545, 557 (2002); Wainwright v. Goode, 464 U.S. 78, 84 (1983).  Thus, Peace's claim lacks substantive merit, and is not subject to federal review because it does not demonstrate a violation of a federal constitutional right.[9]

E.   Denial of Due Process in PCR Proceeding

Next, Peace contends that he was denied due process and a fair trial because his PCR counsel was unable to review the trial counsel's file with respect to the merits of petitioner's ineffective assistance of counsel claims.  However, Peace is unable to demonstrate how he was actually prejudiced by the inadvertent loss of trial counsel's file.  Indeed, as demonstrated in the next section of this Opinion, Peace has failed to make a prima facie showing of ineffective assistance of counsel.  Therefore, this Court finds no denial of due process to petitioner in his trial or in his PCR proceedings.

---

[9] Peace's challenge to restitution does not rise to the level of a constitutional deprivation justifying federal habeas review.  Generally, ordered restitution is nothing more than an allegation of non-constitutional error.  See, for example, United States v. Page, 888 F. Supp. 349, 352-55 (D.R.I. 1995)(claims involving a defendant's ability to pay a fine do not justify a collateral attack under 28 U.S.C. § 2255).

Moreover, errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief.  <u>See</u>, <u>e.g.</u>, <u>Ferguson v. State</u>, 1996 WL 1056727 (D.Del. 1996) and cases cited therein. Accordingly, Peace fails to state a claim involving the violation or deprivation of a federal constitutional right.  This claim for habeas relief will be denied accordingly.

F.   <u>Ineffective Assistance of Trial Counsel</u> (Grounds 6 & 9)

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Under <u>Strickland</u>, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  <u>Id</u>. at 688-89; <u>Jacobs v. Horn</u>, 395 F.3d 92, 102 (3d Cir. 2005); <u>Keller v. Larkins</u>, 251 F.3d 408, 418 (3d Cir.), <u>cert</u>. <u>denied</u>, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." <u>Id.</u>  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.

Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S.

1020 (1996).

If able to demonstrate deficient performance by counsel,

petitioner must also show that counsel's substandard performance

actually prejudiced his defense.  Strickland, 466 U.S. at 687.

Prejudice is shown if "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability

is a probability sufficient to undermine confidence in the

outcome."  Id. at 694.  The reviewing court must evaluate the

effect of any errors in light of the totality of the evidence.

Id. at 695-96.  Thus, the petitioner must establish both

deficient performance and resulting prejudice in order to state

an ineffective assistance of counsel claim.  <u>Id</u>. at 697.  <u>See</u>
<u>also</u> <u>Jacobs</u>, 395 F.3d at 102; <u>Keller</u>, 251 F.3d at 418.

    1.  *Failure to Call Two Witnesses*

    Peace first argues that his counsel was ineffective for
failing to call two witnesses at trial, the alleged juvenile
participants in the crime, Kennan Wynne and Shawn Singleton.
Peace fails to indicate what the testimony of these witnesses
would have included that would have been helpful in exonerating
the petitioner at trial.  The PCR court noted the lack of
affidavits or certifications from these witnesses.  Only
petitioner offered a self-serving certification that was wholly
insufficient to constitute a <u>prima</u> <u>facie</u> showing.  (Rta 5, 14:12-
15:3).

    Decisions by trial counsel with regard to calling and
examining witnesses are strategic by nature and necessitate a
strong level of deference to the attorney's assessment.  <u>See</u>
<u>Diggs v. Owens</u>, 833 F.2d 439, 444-45 (3d Cir. 1987), <u>cert</u>.
<u>denied</u>, 485 U.S. 979 (1988).  Here, the Court finds no deficient
performance by trial counsel in failing to call these witnesses
because there has been no showing by petitioner as to how these
witnesses' testimony would have served to exculpate him at trial.
In fact, as these witnesses were participants in the robbery, it
is more likely that their testimony at trial would have further
implicated petitioner rather than exonerate him.

Thus, there clearly was no deficient performance by counsel in declining to call these juvenile participants as witnesses at trial.  Further, the PCR court found that petitioner failed to demonstrate what the proposed testimony would have disclosed at trial, let alone that the testimony would have exonerated petitioner, and thus, no prima facie showing of prejudice was made to satisfy the second prong under the Strickland test.  This Court finds nothing to indicate that the state court decision on this issue was based on an unreasonable application of the facts in light of the evidence presented at trial.  Nor was the court's decision contrary to established federal law set forth in Strickland.  Peace has not demonstrated that the state court decision, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  Matteo, 171 F.3d at 891.  Accordingly, this claim will be denied for lack of substantive merit.

   2.  *Failure to Explain Admissibility of Certain Evidence*

   In his next claim of ineffective assistance of trial counsel, Peace seems to suggest that had trial counsel explained to him that his out-of-court statement and photo array were admissible evidence, he would have accepted the State's plea

offer rather than proceed to trial.[10]   The Court finds this claim wholly baseless.

There is nothing to indicate that Peace was unaware of the evidence against him.   The evidence was disclosed to petitioner in the State's pretrial discovery packet.   Moreover, Peace offers no evidence to show that trial counsel ever told petitioner that his apology and photo array would not be admissible at trial. Finally, petitioner fails to demonstrate prejudice in this regard.   The impact of the photo array is insignificant given the victim's strong testimony as to petitioner's involvement and petitioner's argument to the jury that he was present at the scene as a victim.   Further, the apology was less damaging than the fact that petitioner actually returned some of the stolen items to the victim.

Therefore, this Court finds that petitioner has not demonstrated either prong of the Strickland test.   There is nothing to indicate that the state court decisions on this issue were based on an unreasonable application of the facts in light of the evidence presented at trial.   Nor were the courts' decisions contrary to established federal law set forth in Strickland.   Peace has not demonstrated that the state court decisions, when evaluated objectively and on the merits, resulted

---

[10]   The plea offer would have resulted in petitioner receiving three years less on his parole ineligibility.

in an outcome that cannot be reasonably justified.  Matteo, 171
F.3d at 891.  This claim lacks merit and will be denied
accordingly.

    3.  *Failure to Object to Admission of Mug Shot*

    Peace also contends that trial counsel was ineffective for
failing to object to the admission of his photo array.  This
claim fails for several reasons.

    First, counsel did object to the submission of the mug shots
to the jury, but the trial court denied his motion.  (Rta 3,
60:12-61:6).  Thus, it cannot be said that counsel's
representation on this issue was wholly deficient.

    Second, petitioner cannot prove prejudice.  As set forth by
the Appellate Division, and by this Court in this Opinion, supra,
at pages 12-17, the admission of the mug shot was harmless error
in light of the overwhelming other evidence of petitioner's guilt
at trial, and the curative instruction given to the jury.  Thus,
even if counsel had objected to the evidence sooner than he did,
it would not have affected the outcome of the trial.

    Therefore, this Court finds that petitioner has not
demonstrated either prong of the Strickland test, and this claim
will be denied for lack of merit.

    4.  *Failure to Object to Jury Charge on Identification*

    In this claim, Peace contends that his counsel was
ineffective for failing to object to the trial court's

instruction to the jury on the issue of identification.  This Court's review of the record confirms a thorough, in-depth, and proper jury instruction that did not misstate the law.  The trial court gave the extended model jury charge on identification almost verbatim.  (Rta 3, 47:24-50:6); see New Jersey Model Jury Charges, Criminal, "Identification" (1990).  Specifically, the court stressed the issue of credibility in eyewitness identifications, and the State's burden to prove identification beyond a reasonable doubt.  Thus, it would appear that there is absolutely no basis for trial counsel to have made an objection to the jury charge.

Furthermore, to establish ineffective assistance of counsel based on a failure to file a motion or object, Peace must be able to show that the motion would have succeeded.  Counsel's failure to file motions or object at trial does not per se constitute ineffective assistance of counsel.  See Kimmelman v. Morrison, 477 U.S. 365, 383-84 (1986); Jelinek v. Costello, 247 F. Supp.2d 212 (E.D.N.Y. 2003).  Rather, a determination of ineffectiveness depends on whether the motion or objection would have been granted had it been made.  United States v. Oakley, 827 F.2d 1023, 1025 (5th Cir. 1987).  See also Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir.), cert. denied, 513 U.S. 1022 (1994)(failure to raise non-meritorious issues does not constitute ineffective assistance of counsel).  Here, it was not

likely that the trial court would have sustained counsel's objection had he made one since the jury charge was substantially lifted from the model jury charges and tailored to the particulars of the case.  Counsel cannot be expected to raise issues that are plainly frivolous and without merit.  Thus, this Court finds that petitioner's trial counsel was not deficient in failing to make this frivolous objection at trial.

Moreover, petitioner makes no argument to show prejudice as a result of trial counsel's failure to object to the jury charge. Peace fails to demonstrate that but for counsel's failure to object to the identification charge, the outcome of the trial would have been different.  Thus, having completely failed to establish either prong of the <u>Strickland</u> test, petitioner's claim of ineffective assistance of trial counsel on this issue will be denied for lack of merit.

G.  <u>Denial of a PCR Evidentiary Hearing</u>

Peace next argues that the state PCR court erred in denying him an evidentiary hearing on his ineffective assistance of counsel claim.  However, as demonstrated above, Peace failed to establish a <u>prima facie</u> case of ineffective assistance of counsel that would warrant a full evidentiary hearing.

As stated earlier in this Opinion, errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas

36

relief.  See, e.g., Ferguson v. State, 1996 WL 1056727 (D.Del.
1996) and cases cited therein.  Furthermore, as a general rule,
matters of state law and rules of procedure and evidence are not
reviewable in a federal habeas petition.  The Supreme Court has
stated that "it is not the province of a federal habeas court to
reexamine state-court determinations on state-law questions."
Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Moreover, federal courts must afford the states deference in
its determinations regarding evidence and procedure.  See Crane
v. Kentucky, 476 U.S. at 690 ("we have never questioned the power
of the States to exclude evidence through the application of
evidentiary rules that themselves serve the interests of fairness
and reliability, even if the defendant would prefer to see that
evidence admitted").  "The federal courts have no supervisory
authority over state judicial proceedings and may intervene only
to correct wrongs of constitutional dimension." Smith v. Horn,
120 F.3d at 414.

Here, it may be construed that Peace is asserting that the
PCR court's denial of an evidentiary hearing violated due
process.  Thus, the appropriate inquiry is "whether the claimed
error of law is a fundamental defect which inherently results in
a complete miscarriage of justice or in an omission inconsistent
with the rudimentary demands of fair procedure." Hutchins, 1991
WL 167036 at *4.  "[A]n otherwise valid conviction should not be

37

set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. at 681.  An error is not harmless if "it aborts the basic trial process or denies it altogether." Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

In this case, a careful review of the PCR proceedings and the state court rulings reveal that Peace failed to establish a prima facie case of ineffective assistance of counsel that would have allowed the state court to grant an evidentiary hearing. The Court finds that the state PCR court committed no error of a constitutional dimension.  Further, there is no showing that the state court determinations "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Williams, 529 U.S. at 412-13.  Therefore, this last claim is denied for failure to show deprivation of a federal constitutional right.

H.  Ineffective Assistance of Appellate Counsel

Peace also broadly asserts that his appellate counsel was ineffective for failing to raise on direct appeal the ineffective assistance of trial counsel claims, as asserted in this habeas

38

petition.  He raised this claim against appellate counsel in his
PCR petition.  The PCR court found that appellate counsel was not
deficient.  The court also determined that there was no showing
by petitioner that the result would have been any different than
the determination made at the PCR proceeding.  (March 16, 2001
PCR Transcript, 10:14-23).  Moreover, the Appellate Division
determined that this claim had no merit.  (Ra 8-12).

Claims of ineffective assistance of appellate counsel are
evaluated under the Strickland standard previously discussed.
See Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa. July
26, 2004).  In order to prevail on a claim that appellate counsel
was ineffective, Peace must show that (1) counsel's performance
fell below an objective standard of reasonableness, and (2) there
was a reasonable probability, but for counsel's deficiency in
raising the arguments on appeal, that the conviction would have
been reversed on appeal.  See Buehl v. Vaughn, 166 F.3d 163, 173-
74 (3d Cir. 1999), cert. dismissed, 527 U.S. 1050 (1999).

Based on review of the record, this Court finds that Peace
fails to establish deficient performance by appellate counsel.
He also fails to demonstrate how any alleged failure by appellate
counsel would have had any reasonable potential for affecting the
outcome of the appeal.  Therefore, this Court cannot conclude
that the determination of this issue by the state courts resulted
in a decision that was contrary to, or involved an unreasonable

application or determination of law or fact.  <u>Williams v. Taylor</u>, <u>supra</u>.  This claim will be denied accordingly.

V.   <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by Peace demonstrates that he has failed to make a substantial showing of the denial of a federal constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

VI.   <u>CONCLUSION</u>

For the foregoing reasons, this Court finds that Peace's § 2254 habeas petition should be denied on the merits.  A certificate of appealability will not issue.  An appropriate Order accompanies this Opinion.


**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge


DATED:  **December 12, 2005**

40
